United States District Court
Southern District of Texas
**ENTERED**
November 27, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JOSE ROCHA, JR., § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 1:23-cv-102 |
| § | |
| DOCTOR ALMEIDA, et al., § | |
| Defendants. § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

On July 20, 2023, Plaintiff Jose Rocha, Jr., proceeding pro se and *in forma pauperis* ("IFP"), filed a prisoner's civil rights complaint under 42 U.S.C. § 1983. Dkt. No. 1. The Court subsequently notified Rocha that his complaint failed to state a claim for which relief could be granted and ordered him to file a memorandum in support of his complaint that more clearly stated the underlying facts of his claims. Dkt. No. 6. Rocha filed his memorandum on September 7, 2023. Dkt. No. 16. In it, he alleges that the following Defendants violated his constitutional rights: (1) "Dr. Almeida; (2) Rafael Lucio, (3) "Corp. Rodrigues"; (4) "Corp. Ayala"; (5) "Corp. Ibarra"; (6) "Srg. Tapia"; and (7) Cameron County Jail "nurses and county officers."[1] Dkt. Nos. 1, 16. Rocha seeks "compensatory damages in the amount of $100,000.00 for [his] pain and suffering and violation of [his] rights with an injunction to solve th[ese] problems from happening in the future." Dkt. No. 16 at 15. For the reasons provided below, it is recommended that: (1) Rocha's claims against Rafael Lucio, Corp. Ibarra, Srg. Tapia, Dr. Almeida, Cameron County Jail nurses, and other unnamed jail officials be **DISMISSED WITH**

---
[1] Plaintiff does not provide all of the defendants' full names or descriptions of their positions.

**PREJUDICE**; (2) Rocha's claims against Corp. Rodrigues and Corp. Ayala be **DISMISSED WITHOUT PREJUDICE**; and (3) the Clerk of Court be **DIRECTED** to **CLOSE** this case.

It is further recommended that the Court **NOTIFY** Rocha that the Court's dismissal of this action counts as a strike for purposes of 28 U.S.C. § 1915(g) and that the Clerk of Court be instructed to send notice of the dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.[2] It is recommended that the Court caution Rocha that if he accumulates three strikes he will not be able to proceed in forma pauperis in any civil action or appeal, if he files that action or appeal while incarcerated or detained in any facility, unless he is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g); *see also Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997).

# I.

## Jurisdiction

The Court has federal question subject matter jurisdiction because Rocha has alleged violations of 42 U.S.C. § 1983. *See* Dkt. No. 16 at 2; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

---

[2] Section 1915(g) of Title 28 prohibits prisoners from proceeding in forma pauperis if they have had three actions or appeals dismissed for frivolousness, maliciousness, or failure to state a claim. 28 U.S.C. § 1915(g). The Fifth Circuit refers to this rule as the "three-strikes" provision. *Adepegba v. Hammons*, 103 F.3d 383, 385 (5th Cir. 1996).

## II.

## **Background**

Rocha states that he is currently incarcerated in the Cameron County Jail while awaiting trial. Dkt. No. 16 at 2. He argues that various instances of Defendants' conduct violated his constitutional rights. Rocha first asserts that he has been seeing a psychiatrist for certain mental health issues. *Id*. After his psychiatrist prescribed him medication, Dr. Almeida—ostensibly the doctor at the Cameron County Jail—ordered "a blood check for diabetes and high blood pressure." *Id*. Rocha argues that the blood tests persist and violate his Fourth Amendment right against unreasonable searches and seizures and constitute medical malpractice. *Id*.

Rocha also states that he is "being forced to wake up [three] times a day for [the] diabetes and high blood pressure check[]ups every day" in violation of his Eighth Amendment right against cruel and unusual punishment. *Id*. at 4. He notes that "on several occasions," unnamed jail nurses woke him up at 3:00 a.m., 7:00 a.m., and 6:00 p.m. for these checks on Dr. Almeida's orders. *Id*. Rocha argues that he feels tortured by his having to wake up for blood checks and that he "never had a problem with diabetes or high blood pressure in [his] life." *Id*. at 4–5, 10. Rocha "tried to talk and come to an agreement" with jail officials "on how to fix this problem with Dr. Almeida's nurses," but they only responded "with threats to put [Rocha] in solitary confinement . . . if [he didn't] wake up forcibly for the check-ups." *Id*. at 4–5. When Rocha told Dr. Almeida that he didn't want to wake up at night to have his blood checked, Dr. Almeida "told [Rocha] that it's procedure." Dkt. No. 1-1 at 1–2.

Rocha claims that unnamed jail officials have blocked him from accessing his

commissary in violation of his Fifth Amendment right to due process. Dkt. No. 16 at 5–9.

Rocha asserts that on three occasions, he was exposed to unreasonably safe living conditions in violation of his Eighth Amendment rights. *Id.* at 9. First, Rocha describes that after dinner on June 16, 2023, "there was an unnecessary abuse of an officer, pushing and throwing an inmate toward the r[ail] and hurting him." *Id.* at 11. He does not specify which officer and which inmate were involved in the incident. *Id.* Second, Rocha states that unspecified jail guards failed to adequately tend to a fellow inmate who required medical treatment. *Id.* at 11–12. Plaintiff states that witnessing these two incidents worsened his mental health conditions. *Id.* at 12. Finally, Rocha claims that on July 20, 2023, some inmates found glass in their food. *Id.* at 12–13. Rocha ate his food but "does not know if [he] ate some of the broken pieces of glass." *Id.* at 13. Rocha reported the presence of glass in the inmates' food to Corp. Rodrigues and Corp. Ayala. *Id.* at 13. When Rocha asked for more food without glass, Corp. Ayala "got mad and then threw some plates through the rails for no reason." *Id.*

Lastly, Rocha alleges that his mail has been opened, and he has been restricted from buying stamps to contact the Court, both in violation of unspecified constitutional rights. *Id.* at 15. Rocha does not state who was purportedly opening his mail or blocking his access to postage stamps. *Id.*

### III.
### Legal Standard

**A.   IFP Screening**

Because Plaintiff is proceeding IFP and raises a § 1983 claim, the Court must

screen his complaint. *See* 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). Under the Prisoner Litigation Reform Act ("PLRA"), a court must dismiss a prisoner's complaint if it "is frivolous, malicious, . . . fails to state a claim upon which relief can be granted[,] or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see id.* § 1915(e)(2). A claim is frivolous if it has no arguable basis in law or fact. *Thompson v. Tex. Dep't of Crim. Just.*, 67 F.4th 275, 279 (5th Cir. 2023). "[A] complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Id.* A dismissal for failure to state a claim under § 1915 is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6); *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013). "[A] complaint fails to state a claim upon which relief may be granted when it does not contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A pro se plaintiff's pleadings are "to be liberally construed" and no matter how "inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. Proc. 8(e). ("Pleadings must be construed so as to do justice."). Notwithstanding, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Thorn v. McGary*, 684 F. App'x 430, 433 (5th Cir. 2017) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam)).

A district court's power to dismiss a case under 28 U.S.C. § 1915 "is cabined by the requirement of basic fairness." *Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016).

"[F]airness in this context requires both notice of the court's intention and an opportunity to respond before dismissing sua sponte with prejudice." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (cleaned up); *see also Brown*, 829 F.3d at 370 ("[A] district court may only dismiss a case *sua sponte* after giving the plaintiff notice of the perceived inadequacy of the complaint and an opportunity for the plaintiff to respond."). As noted, the Court notified Rocha that his complaint was deficient and gave him an opportunity to respond. Dkt. No. 6. Rocha timely filed his Response. Dkt. No. 16.

**B.      42 U.S.C. § 1983**

Section 1983 provides a cause of action against any person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983, however, "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S.137, 144 n. 3 (1979). To establish a claim under § 1983, a plaintiff must: "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015). "A plaintiff may not . . . plead merely conclusory allegations to successfully state a [§] 1983 claim, but must instead set forth specific facts which, if proven, would warrant the relief sought." *Arnaud v. Odom*, 870 F.2d 304, 307 (5th Cir. 1989). Further, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *see*

*Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (Crone, M.J.) ("To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant."). However, if an inmate initially does not adequately identify who allegedly violated his constitutional or federal rights but the information that would enable him to do so is "readily obtainable," his complaint should not be dismissed for failure to identify the alleged offenders. *Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) (reversing and remanding dismissal of prisoner's complaint for failure to identify attackers in a § 1983 claim because plaintiff provided some of his attackers' identifying information and "a plausible explanation for his inability to readily identify" them).

## IV.

## Discussion

As an initial matter, the Court finds that Rocha cannot recover compensatory damages for any of the alleged injuries he suffered in this case. Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Fifth Circuit has "held that the application of [§ 1997e(e)] turns on the relief sought by a prisoner, and that it prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged." *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 605 (5th Cir. 2008) (citing *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (per curiam)). Here, Rocha does not allege any physical injuries, so he cannot recover compensatory damages

based on an alleged violation of his constitutional rights. *See id.* However, Rocha may still seek injunctive relief without a showing of physical injury. *See id.* (stating that § 1983 allows for injunctive relief); *Geiger*, 404 F.3d at 375 ("This court has held in the Eighth Amendment context that the physical injury requirement of § 1997e(e) does not apply to requests for declaratory or injunctive relief."); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) ("The prohibitive feature of § 1997e(e), requiring physical injury before recovery, does not apply in the context of requests for declaratory or injunctive relief sought to end an allegedly unconstitutional condition of confinement."); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (holding that claims for injunctive relief survive in a § 1983 case even absent a physical injury).

To obtain injunctive relief, a plaintiff must establish a likelihood of future harm. *Geiger*, 404 F.3d at 375. A showing of past exposure to illegal conduct will not support a request for injunctive relief "if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up). In other words, to obtain injunctive relief, "a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). Any alleged future injury "may not be conjectural, hypothetical, or contingent; it must be real and immediate." *Id.* This requirement is based on principles of Article III standing. *Id.* A court lacks jurisdiction to entertain claims for injunctive relief when a plaintiff has failed to allege facts showing a substantial likelihood of future injury. *Id.*

The Court will now screen Rocha's claims for injunctive relief. *See* 28 U.S.C.

§ 1915A(b).[3] The Court assumes for purposes of preliminary screening that defendants were acting under color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 56–57 (1988); *Bishop v. Karney*, 408 F. App'x 846, 848 (5th Cir. 2011).

### (1)     Rocha's § 1983 Claims Against Rafael Lucio, "Corp. Ibarra," and "Srg. Tapia" Should Be Dismissed With Prejudice

Rocha names Rafael Lucio, "Corp. Ibarra," and "Srg. Tapia" as defendants. The Court notified Rocha of the need to clarify the facts underlying his complaint and gave him the opportunity to do so. Dkt. No. 6. He responded to the Court's order and filed a memorandum in support of his complaint. Dkt. No. 16. However, Rocha neither alleges any facts concerning the trio's conduct nor asserts that any of them violated his rights. Accordingly, Rocha's claims against Rafael Lucio, Corp. Ibarra, and Srg. Tapia should be dismissed with prejudice. *See Thompson*, 709 F.2d at 382; *Jolly*, 923 F. Supp. at 943.

### (2)     Rocha's Fourth Amendment Claim Against Dr. Almeida Should Be Dismissed With Prejudice

Rocha alleges that Dr. Almeida is violating his Fourth Amendment right against unreasonable searches and seizures by ordering the jail nurses to check his blood pressure and blood sugar. Dkt. No. 16 at 2–5. Rocha contends that he continues to be subjected to

---

[3] Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [§] 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court has stated, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). However, in *Jones*, the Court went on to "conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216; *see also Torns v. Miss. Dep't of Corr.*, 301 F. App'x 386, 389–90 (5th Cir. 2008) (per curiam) ("[F]ailure to exhaust is not subject to screening for sua sponte dismissal by the district court."). Nevertheless, "a court can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust." *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *see United States v. Del Toro-Alejandre*, 489 F.3d 721, 723 (5th Cir. 2007) ("[T]he usual PLRA practice would permit a district court to dismiss sua sponte a prisoner's complaint for failure to exhaust in the rare instance where the prisoner's failure to exhaust appeared on the face of his complaint."). Though he later filed a list of grievances, it is not clear from the face of Rocha's complaint that he failed to exhaust his administrative remedies. Accordingly, the Court does not assess here whether Rocha's claims were properly exhausted.

the tests such that injunctive relief may be proper. *See id.* at 2–5, 10; *Lyons*, 461 U.S. at 102.

The Fourth Amendment to the United States Constitution provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The Fourth Amendment prohibits only *unreasonable* searches. The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Grady v. North Carolina*, 575 U.S. 306, 310 (2015).

The Court has not found any legal authority in which blood pressure checks or blood sugar tests solely for checking blood sugar levels (as opposed to also testing for drug use or blood alcohol levels) have been analyzed in the Fourth Amendment context. Instead, health-related issues pertaining to inmates and pretrial detainees are generally assessed under the Eighth and Fourteenth Amendments, as a detention center has the "constitutional obligation . . . to provide adequate medical care to those whom it has incarcerated." *West*, 487 U.S. at 54. Assuming arguendo that the blood tests here constitute searches under the Fourth Amendment, the searches are not unreasonable. Dr. Almeida, in line with his obligation, provides Rocha with medical care. *See id.* Rocha does not claim that he has refused the blood tests or is otherwise injured by them. Instead, he disagrees with Dr. Almeida's assessment that the blood checks are necessary to maintain his health because he has not had prior issues with diabetes or blood pressure. *See* Dkt. No. 16 at 5. Absent exceptional circumstances not present here, however, a disagreement over appropriate medical care will not support a § 1983 action. *See Banuelos v.*

*McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Moreover, the "intrusion occasioned by a blood test is not significant." *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 625 (1989); *cf. Green v. Berge*, 354 F.3d 675, 679–80 (7th Cir. 2004) (Easterbrook, J. concurring) ("Prisons . . . have a constitutional duty to attend to inmates' medical needs, and the discharge of this duty requires them to learn details about the inmates' medical conditions. That will entail the drawing of blood (how else could the prison learn whether an inmate is diabetic?) . . . ."); *Groceman v. U.S. Dep't of Just.*, 354 F.3d 411, 413 (5th Cir. 2004) ("[A]lthough collection of DNA samples from prisoners implicates Fourth Amendment concerns, such collections are reasonable in light of an inmate's diminished privacy rights, the minimal intrusion involved, and the legitimate government interest in using DNA to investigate crime."); *Dunn v. White*, 880 F.2d 1188, 1195–97 (10th Cir. 1989) (nonconsensual blood draw to test for AIDS did not violate prisoner's Fourth Amendment rights because the prison had "a substantial interest" in treating "those infected with the disease and in taking steps to prevent further transmission").[4]

Rocha also argues that Dr. Almeida committed medical malpractice because Rocha did not request to have his blood sugar and blood pressure checked. Dkt. No. 16 at 3. Again, this argument fails because "medical malpractice, or a disagreement with medical treatment . . . will not support a § 1983 cause of action." *English v. Winn Corr. Ctr.*, 548 F. App'x 287, 288 (5th Cir. 2013) (per curiam) (citing *Gobert v. Caldwell*, 463 F.3d 339,

---

[4] As noted further below, the rights of pretrial detainees like Rocha derive from separate constitutional provisions than do the rights of convicted inmates. However, in reviewing more typical alleged Fourth Amendment violations in a prison facility, the Supreme Court in *Bell v. Wolfish* saw "no reason" to "distinguish[] between pretrial detainees and convicted inmates in reviewing the challenged security practices" in that case. 441 U.S. 520, 547 n.28 (1979). The Court reasoned that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546.

346 (5th Cir. 2006)); *see Banuelos*, 41 F.3d at 235. Rocha's § 1983 claim against Dr. Almeida concerning his Fourth Amendment rights should be dismissed with prejudice.

### (3) Rochas Eighth Amendment Claims Against Dr. Almeida and Cameron County Jail Nurses Should Be Dismissed With Prejudice

Rocha asserts that the blood pressure and blood sugar checks interrupt his sleep schedule in violation of his Eighth Amendment right against cruel and unusual punishment. Dkt. No. 16 at 4. The rights of convicted inmates and pretrial detainees derive from separate constitutional provisions. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). The "State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Id*. Accordingly, courts "evaluat[e] the constitutionality of conditions or restrictions" of pretrial detainees under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979).

The Fifth Circuit distinguishes challenges based on "general conditions, practices, rules, or restrictions of pretrial confinement" from challenges based on "a jail official's episodic acts or omissions." *Hare*, 74 F.3d at 640. In the former situation, the test is whether a pretrial detainee is "subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Id*. In the latter situation, the test is whether "the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Id*. at 650.

Ultimately, in evaluating the constitutionality of conditions or restrictions of pretrial detention under the Due Process Clause, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell*, 441 U.S. at 535. "Since the State *does* punish convicted prisoners, but *cannot* punish pretrial detainees, a pretrial detainee's due process rights are said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* at 639 (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Because "pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the Court's rubric of 'basic human needs.'" *Hare*, 74 F.3d at 639.

"[S]leep undoubtedly counts as one of life's basic needs." *Harper*, 174 F.3d at 720. Accordingly, conditions of confinement that prevent prisoners from getting adequate sleep may constitute—or potentially constitute—punishment in violation of the Eighth and Fourteenth Amendments. *See, e.g.*, *id.* (holding that district court erred by concluding that appellant's claims based on prison conditions were frivolous where the prisoner was "placed in cells next to psychiatric patients who scream, beat on metal toilets, short out the power, flood the cells, throw feces, and light fires, resulting in his loss of sleep for days at a time"); *Upshaw v. Alameda County*, 377 F. Supp. 3d 1027, 1033 (N.D. Cal. 2019) (Donato, J.) (granting a preliminary injunction in a prisoner class action suit in the prisoners' favor regarding their allegation of a constitutional violation based on sleep deprivation where the complaint alleged that the combination of an 11:00 p.m. "lights out" schedule; consistent lighting in the prison even during "lights out"; cell checks every thirty minutes using flashlights; a 2:30 a.m. "pill call" for those who take

medication; and a 4:00 a.m. breakfast service deprived the prisoners of more than five-and-a-half hours of consistent sleep per night—and only about three-and-a-half hours if the prisoner took medication). *Id.* at 1030.

Here, Rocha claims that his constitutional rights are violated when, occasionally, Dr. Almeida or jail nurses wake him up at 3:00 a.m. to check his blood sugar. Dkt. No. 16 at 4. He tried to negotiate with Dr. Almeida and jail nurses to test his blood at a different hour. *Id.* at 4–5. He states that Dr. Almeida told him that it is a standard practice to wake inmates up for blood sugar checks. Dkt. No. 1-1 at 1–2. These purported actions underlying his constitutional claim are substantially less disruptive than the actions in *Harper* and *Upshaw*, and the Court has found no cases in which similar actions have alone been deemed unconstitutional. Further, unlike in *Upshaw*, Rocha has not stated any facts concerning his sleep schedule. It is possible that Dr. Almeida and jail nurses occasionally wake Rocha up at 3:00 a.m. to check his blood sugar and that Rocha still gets sufficient sleep. Rocha has not stated when he goes to sleep for the night or when he wakes up in the morning. Privy only to the fact that jail nurses occasionally wake Rocha up at 3:00 a.m. for blood sugar checks, the Court finds that Rocha has failed to allege sufficient facts to support his § 1983 claim based on a violation of his Eighth and Fourteenth Amendment rights. *See Rogers*, 709 F.3d at 407. Rocha's § 1983 claim against jail nurses and Dr. Almeida should be dismissed with prejudice. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### (4) Rocha's Claim Against "Corp. Rodrigues" and "Corp. Ayala" Should Be Dismissed Without Prejudice

The Court lacks jurisdiction to entertain Rocha's claim against "Corp. Rodrigues" and "Corp. Ayala" for allegedly exposing Rocha to unreasonably safe living conditions at

the Cameron County Jail in violation of his Eighth Amendment rights. *See* Dkt. No. 16 at 9; *Geiger*, 404 F.3d at 375. As noted, underlying his claim is the fact that there was once glass in the food served to the inmates, and Corp. Rodrigues and Corp. Ayala threw "through the rails" new plates of food without glass to Rocha and other inmates. Dkt. No. 16 at 11–12. Rocha also claims that prison guards pushed another inmate against a rail and failed to adequately respond when another inmate allegedly required medical treatment. Dkt. No. 16 at 11–12. These alleged incidents were one-time occurrences, and Rocha has not shown or even asserted a likelihood of future harm stemming from the incidents. *See Geiger*, 404 F.3d at 375 ("Geiger's allegations that defendants withheld his magazines on a single occasion does nothing to establish a real and immediate threat that defendants would violate his First Amendment rights in the future."). Rocha lacks standing to seek injunctive relief based on his claims against Corp. Rodrigues and Corp. Ayala, so they should be dismissed without prejudice. *Lyons*, 461 U.S. at 102; *see Carver*, 18 F.4th at 498 (noting that jurisdictional dismissals must be without prejudice); *Williams v. Morris*, 614 F. App'x 773, 774 (5th Cir. 2015) ("Ordinarily, when a complaint is dismissed for lack of jurisdiction, including lack of standing, it should be without prejudice.").

### (5) Rocha's Remaining Claims Against Unnamed Jail Officials Should Be Dismissed With Prejudice

Rocha claims that jail officials are actively blocking his access to his commissary in violation of his due process rights. Dkt. No. 16 at 5–9. This claim also fails to support Rocha's § 1983 cause of action. First, Rocha has not identified any of the defendants or other individuals who are purportedly blocking his access to his commissary. *See Thompson*, 709 F.2d at 382. In any event, "[a] prisoner does not have a protected liberty

interest in access to the commissary." *Strong v. Livingston*, No. 2:16-CV-131, 2016 WL 10954423, at *3 n.11 (S.D. Tex. Oct. 11, 2016) (Libby, M.J.) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)); *see Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) ("We agree that Madison's 30[-]day commissary and cell restrictions as punishment . . . do not implicate due process concerns."); *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 606 (W.D.N.Y. 2015) ("The Court agrees with the ECHC Defendants that prisoners have no constitutional right to access a commissary."); *Kossie v. Crain*, 602 F. Supp. 2d 786, 794 (S.D. Tex. 2009) (Owsley, M.J.) ("An inmate's loss of commissary and recreation privileges, and his confinement to solitary, are not atypical, significant deprivations that could create a protected liberty interest."). Accordingly, Rocha's § 1983 claim against unnamed jail officials concerning his commissary should be dismissed with prejudice.

Finally, Rocha contends that his "legal mail" is being opened, and he is being restricted from buying postage stamps to correspond with the Court. Dkt. No. 16 at 15. Rocha does not describe who is opening his mail or blocking his access to postage stamps. *See Thompson*, 709 F.2d at 382. He does not explain the circumstances of the alleged violations or if he is in fact unable to correspond with the Court (though, his nine filings in this case are evidence to the contrary). *See Arnaud*, 870 F.2d at 307. And he does not state that his postage issues raise violations of constitutional or federal law. *See Mason*, 806 F.3d at 275. Thus, Rocha's § 1983 claim against unnamed jail officials with respect to his postage should be dismissed with prejudice.

V.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that: (1) Rocha's claims against Rafael Lucio, Corp. Ibarra, Srg. Tapia, Dr. Almeida, Cameron County Jail nurses, and other unnamed jail officials be **DISMISSED WITH PREJUDICE**; (2) Rocha's claims against Corp. Rodrigues and Corp. Ayala be **DISMISSED WITHOUT PREJUDICE**; and (3) the Clerk of Court be **DIRECTED** to **CLOSE** this case.

It is further recommended that the Court **NOTIFY** Rocha that the Court's dismissal of this action counts as a strike for purposes of 28 U.S.C. § 1915(g) and that the Clerk of Court be instructed to send notice of the dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov. Finally, it is recommended that the Court caution Rocha that if he accumulates three strikes, he will not be able to proceed in forma pauperis in any civil action or appeal, if he files that action or appeal while incarcerated or detained in any facility, unless he is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g); *see also Carson v. Johnson*, 112 F.3d 818, 819-820 (5th Cir. 1997).

VI.

**NOTICE TO PARTIES**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this **27th** day of **November, 2023**, at Brownsville, Texas.

Ignacio Torteya, III
United States Magistrate Judge